# EXHIBIT A

Andrea Lynn Chasteen
Will County Circuit Clerk
Twelfth Judicial Circuit Court
Electronically Filed
2024LA000832
Filed Date: 10/9/2024 1:06 PM
Envelope: 29714702
Clerk: SLH

## IN THE CIRCUIT COURT OF WILL COUNTY, ILLINOIS
## TWELFTH JUDICIAL CIRCUIT

ANTHONY ZEOLI, )
)
Plaintiff, )
)
v. ) No. 2024LA000832
)
SIGNATURE FEDERAL CREDIT UNION, )
)
Defendant. )

### COMPLAINT

Now comes the Plaintiff, ANTHONY ZEOLI ("Plaintiff"), by and through his attorneys, and for his Complaint against the Defendant, SIGNATURE FEDERAL CREDIT UNION ("Defendant"), Plaintiff alleges and states as follows:

### PARTIES

1.     At all times relevant herein, Plaintiff was a resident of Mokena, Illinois.

2.     Plaintiff is a "person" as defined in 815 ILCS 505/1(c), as he is a natural individual.

3.     Plaintiff is a "consumer" as defined in 815 ILCS 505/1(e), as he is a person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household.

4.     On information and belief, Defendant is a federal credit union, whose principal place of business is located in Alexandria, Virginia.

5.     Defendant is a "person" as defined in 815 ILCS 505/1(c), as it is a company and it is a business entity or association.

Rm. 902

Initial case management set for
01/27/2025 at: 9:00 a.m.

1

## FACTS COMMON TO ALL COUNTS

6.     On or about May 24, 2023, Plaintiff entered into a Credit Line Account Variable Interest Rate Home Equity Secured Open-End Credit Agreement with Defendant (the "Credit Line"). A copy of the agreement for the Credit Line is attached as Exhibit 1.

7.     The agreement for the Credit Line provides for an interest rate as follows:

> Your Account will be subject to a discounted Introductory Rate. FINANCE CHARGES will be computed using a Daily Periodic Rate of .007946%, corresponding to an **ANNUAL PERCENTAGE RATE** of 2.90%. This Introductory Rate will be in effect until 5/24/2033. If Your Account was not subject to this discounted Introductory Rate, Your Account would have been subject to a Daily Periodic Rate of .024658% corresponding to an **ANNUAL PERCENTAGE RATE** of 9.00%.

*See* Exhibit 1, p. 2, ¶ 7 (emphasis in original).

8.     When Plaintiff received his account statement from Defendant for February 2024, Plaintiff discovered that effective February 26, 2024, Defendant had changed the interest rate under the agreement for the Credit Line from 2.90% to 9.50%. Defendant unilaterally made this change over nine years earlier than any increase in the interest rate should have taken effect. This caused an increase in the dollar amount of interest from approximately $12.03 per day to $39.42 per day, or from approximately $4,390.95 per year to $14,388.30 per year.

9.     Upon discovering that Defendant had increased his interest rate as detailed above, Plaintiff contacted Defendant and requested a copy of his closing documents associated with, and including, the agreement for the Credit Line.

10.     In response to said request, an authorized agent of Defendant sent Plaintiff the requested closing documents. However, the agreement for the Credit Line which Plaintiff received from Defendant pursuant to this request was not the same version Plaintiff had signed the previous

2

year. A copy of this different agreement, which Plaintiff received pursuant to his request, is attached as Exhibit 2.

11.     The agreement Plaintiff received from Defendant pursuant to his request (the "forged Credit Line agreement") provided that the annual percentage rate of 2.90% would only be in effect until August 24, 2023, not until May 24, 2033 as provided in the version of the agreement Plaintiff signed. It also appeared that Plaintiff's initials had been entered by someone else on the second page of the forged Credit Line agreement, on the "Borrower's Initials" line. *See* Exhibit 2, p. 2.

12.     Plaintiff never signed an agreement for the Credit Line which stated that the 2.90% interest annual percentage rate would only be in effect until August 24, 2023. Plaintiff also never initialed a page of the agreement for the Credit Line which stated that the 2.90% interest annual percentage rate would only be in effect until August 24, 2023.

13.     Defendant, by and through its authorized agents and employees, made a number of representations to Plaintiff, both verbal and non-verbal, before, during, and/or after the loan transaction, about the nature of the agreement for the Credit Line. These representations include, but are not limited to, a promise that the interest rate for the Credit Line would remain at 2.90% until May 24, 2033.

14.     In addition, Defendant, by and through its authorized agents and employees, suppressed and concealed from Plaintiff, before, during, and/or after the loan transaction, certain material facts upon which Plaintiff reasonably relied, which include, but are not limited to, the following:

a.     That effective February 26, 2024, the interest rate under the agreement for the Credit Line would increase to 9.50%;

3

           b.       That the interest rate under the agreement for the Credit Line would increase over nine years before any increase should have taken effect; and

           c.       That Defendant would alter the written agreement for the Credit Line with out Plaintiff's knowledge or agreement; and

           d.       That Defendant would forge Plaintiff's initials on a second version of the agreement, which contains terms to which Plaintiff did not agree.

15.     Plaintiff's decisions to enter into the agreement for the Credit Line were induced by the representations made, the impressions conveyed, and the information omitted and suppressed by Defendant, as described above.

16.     In reliance upon Defendant's representations and omissions as set forth above, entered into the agreement for the Credit Line.

17.     Defendant was or should have been fully aware that Plaintiff's decision to enter into the agreement for the Credit Line was induced by, and Plaintiff relied upon, Defendant's misrepresentations, omissions, suppressions, and concealments of fact, as described above.

18.     In justifiable reliance upon Defendant's misrepresentations, omissions, suppressions, and concealments of fact, as described above, Plaintiff entered into the agreement for the Credit Line. Had Plaintiff been aware of the information that had been misrepresented, concealed, suppressed, and/or omitted, Plaintiff would not have entered into the agreement for the Credit Line.

19.     Defendant knowingly committed the unfair, deceptive, and unconscionable acts and practices described above.

20.     As a result of Defendant's misrepresentations, omissions, suppressions, and concealments of fact, as described above, Plaintiff has suffered, and continues to suffer, concrete and particularized injuries, harm, and damages, which include, but are not limited to, the following:

a.     Increase in the interest paid under the agreement for the Credit Line for a period of over nine years; and

b.     Stress, aggravation, frustration, inconvenience, emotional distress, and similar categories of damages.

**COUNT I**
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT – 815 ILCS 505/1,** *et seq.*

21.     Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

22.     815 ILCS 505/2 states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

23.     In the transaction by which Plaintiff and Defendant entered into the agreement for the Credit Line, Defendant made false promises, misrepresentations, concealments, suppressions, and omissions of material facts, with the intent that Plaintiff rely upon said false promises, misrepresentations, concealments, suppressions, and omissions of material facts.

24.     Said false promises, misrepresentations, concealments, suppressions, and omissions of material facts include, but are not limited to, those described above.

5

25.     815 ILCS 505/10a states:

> (a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper...
>
> (c) [T]he Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

26.     In committing the actions and omissions listed above, Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act, including, but not limited to, 815 ILCS 505/2.

27.     By reason thereof, Plaintiff is entitled to a judgment against Defendant, declaring that Defendant's conduct violated 815 ILCS 505/2, enjoining Defendant from engaging in similar conduct in the future, and awarding actual damages, punitive damages, injunctive relief, costs, and attorneys' fees.

WHEREFORE, Plaintiff prays for a judgment against Defendant as follows:

  a.    Awarding Plaintiff all actual damages suffered, plus all incidental and consequential damages;

  b.    Awarding Plaintiff punitive damages, pursuant to the Court's ability to award "any other relief which the court deems proper," as set forth in 815 ILCS 505/10a(a);

  c.    Awarding Plaintiff reasonable attorneys' fees and expenses, pursuant to 815 ILCS 505/10a(c);

  d.    Awarding Plaintiff all costs and expenses incurred in this action;

   e. Awarding pre-judgment interest and post-judgment interest as allowed by law; and

   f. Awarding Plaintiff such further relief as the Court deems proper.

## COUNT II
## COMMON LAW FRAUD

28. Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

29. In the transaction by which Plaintiff and Defendant entered into the agreement for the Credit Line, Defendant made false statements of, and omissions of, material facts, which include, but are not limited to, those described above.

30. At the time Plaintiff and Defendant entered into the agreement for the Credit Line, Defendant knew or reasonably should have known that the statements and omissions described above were false.

31. At the time of the transaction by which Plaintiff and Defendant entered into the agreement for the Credit Line, Defendant intended to induce Plaintiff to enter into the agreement by making the false statements and omissions described above.

32. Plaintiff reasonably relied upon the truth of the false statements of, and omissions of, material facts, described above when deciding to enter into the agreement for the Credit Line.

33. As a result of his reasonable reliance upon Defendant's false statements and omissions of material facts, Plaintiff has suffered and will continue to suffer concrete and particularized injuries, harm, and damages as outlined in paragraph 20 above.

  WHEREFORE, Plaintiff prays for a judgment against Defendant as follows:

   a. Awarding Plaintiff all actual damages suffered, plus all incidental and consequential damages;

      b.      Awarding Plaintiff punitive damages;

      c.      Awarding Plaintiff all costs and expenses incurred in this action;

      d.      Awarding pre-judgment interest and post-judgment interest as allowed by law; and

      e.      Awarding Plaintiff such further relief as the Court deems proper.

## COUNT III
## FRAUD IN THE INDUCEMENT

34.      Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

35.      In the transaction by which Plaintiff and Defendant entered into the agreement for the Credit Line, Defendant made false statements of, and omissions of, material facts, which include, but are not limited to, those described above.

36.      At the time Plaintiff and Defendant entered into the agreement for the Credit Line, Defendant knew or reasonably should have known that the statements and omissions described above were false.

37.      At the time of the transaction by which Plaintiff and Defendant entered into the agreement for the Credit Line, Defendant intended to induce Plaintiff to enter into the agreement by making the false statements and omissions described above.

38.      Plaintiff reasonably relied upon the truth of the false statements of, and omissions of, material facts, described above when deciding to enter into the agreement for the Credit Line.

39.      As a result of his reasonable reliance upon Defendant's false statements and omissions of material facts, Plaintiff has suffered and will continue to suffer concrete and particularized injuries, harm, and damages as outlined in paragraph 20 above.

8

40.     Plaintiff would not have entered into the agreement for the Credit Line had he known that Defendant had made false statements of, and omissions of, material facts, as described above.

41.     At the time Plaintiff and Defendant entered into the agreement for the Credit Line, Defendant knew, or reasonably should have known, that its false statements of, and omissions of, material facts, as described above, would induce Plaintiff to enter into the agreement for the Credit Line.

WHEREFORE, Plaintiff prays for a judgment against Defendant as follows:

a.     Enforcing the agreement for the Credit Line in the form to which Plaintiff and Defendant originally agreed, with a 2.90% rate of interest in effect until May 24, 2033;

b.     Awarding Plaintiff all actual damages suffered, plus all incidental and consequential damages;

c.     Awarding Plaintiff punitive damages;

d.     Awarding Plaintiff all costs and expenses incurred in this action;

e.     Awarding pre-judgment interest and post-judgment interest as allowed by law; and

f.     Awarding Plaintiff such further relief as the Court deems proper.

### COUNT IV
### BREACH OF CONTRACT

42.     Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

43.     On or about May 24, 2023, Plaintiff and Defendant entered into the agreement for the Credit Line which is attached as Exhibit 1.

9

44.     Plaintiff performed all of his obligations under the agreement for the Credit Line, including, but not limited to, making all payments due and owing under the agreement in a timely manner.

45.     Defendant breached the agreement for the Credit Line by increasing the interest rate under the agreement from 2.90% to 9.50%, over nine years before any such increase should have taken place.

46.     As a result of Defendant's breach of the agreement for the Credit Line, Plaintiff has suffered and will continue to suffer concrete and particularized injuries, harm, and damages as outlined in paragraph 20 above.

WHEREFORE, Plaintiff prays for a judgment against Defendant as follows:

   a. Awarding Plaintiff all actual damages suffered, plus all incidental and consequential damages;

   b. Awarding Plaintiff all costs and expenses incurred in this action;

   c. Awarding pre-judgment interest and post-judgment interest as allowed by law; and

   d. Awarding Plaintiff such further relief as the Court deems proper.

RESPECTFULLY SUBMITTED,

ANTHONY ZEOLI

By:

David B. Levin
Attorney for Plaintiff
Law Offices of Todd M. Friedman, P.C.
707 Skokie Blvd., Suite 600
Northbrook, IL 60062
(224) 218-0882
dlevin@toddflaw.com

### AFFIDAVIT PURSUANT TO ILLINOIS SUPREME COURT RULE 222(b)

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

The undersigned attorney for Plaintiff hereby certifies that the total of money damages sought in this Complaint does exceed $50,000, exclusive of interest, costs and attorneys' fees.

David B. Levin
Attorney for Plaintiff
Law Offices of Todd M. Friedman, P.C.
707 Skokie Blvd., Suite 600
Northbrook, IL 60062
(224) 218-0882
dlevin@toddflaw.com

12

# EXHIBIT 1



*Signature*
FEDERAL CREDIT UNION

P.O. Box 148
Alexandria, Virginia 22313-0148
1-800-336-0284

## CREDIT LINE ACCOUNT VARIABLE INTEREST RATE HOME EQUITY SECURED
## OPEN-END CREDIT AGREEMENT AND TRUTH-IN-LENDING DISCLOSURE

Name __ANTHONY ZEOLI__
(Borrower)                                                                                                 (Borrower)

Address of Security Property __205 SOUTH WHITTAKER ST__          __NEW BUFFALO__     __MI__        __49117__
(Street)                                          (City)            (State)       (Zip)

Legal Description of Security Property __PLEASE SEE EXHIBIT A FOR LEGAL DESCRIPTION__

Date of Agreement __5/24/2023__          Loan Number __02__                    Account Number __587038__

Maximum Credit Limit $ __154,188.00__     Minimum Initial Advance __500.00__          Minimum Other Advance __NA__

Final Date to Request Advance __5/24/2030__                 Agreement Maturity Date __6/25/2038__

In this Agreement, the use of the words "Credit Union," "We," "Us" and "Our" mean SIGNATURE FEDERAL CREDIT UNION. Any person who signs this Agreement as Borrower, individually and collectively, is sometimes referred to as "You" or "Your." "Account" means the line of credit available to You under the terms of this Agreement. Numbers, phrases or words preceded by a ☐ are applicable only if the ☐ is marked, e.g. ☒.

**1. PROMISE TO PAY.** You promise to pay Us all amounts You borrow from Us under this Agreement, together with Finance Charges, Late Charges, Collection Costs and other charges described herein.

**2. USE OF YOUR ACCOUNT.** To the extent permitted by law and in this Agreement, You may use Your Account for any purpose.

**3. CREDIT LIMIT.** We have granted You a Maximum Credit Limit which is shown above and You agree not to exceed this Maximum Credit Limit. If You do, You will be in default under this Agreement and, in addition to any other rights We may have, We may require You to repay such excess sums immediately. Any amount of credit extended that exceeds the Maximum Credit Limit stated above is not secured by the interest in the Security Property. In the event that Your Maximum Credit Limit is increased, this Agreement will continue in effect subject to the new Maximum Credit Limit.

**4. ADVANCES.** You may request an advance by telephone, in person, by letter or by using any other means We have provided to access Your Account. When You request an advance, We may require You to prove Your identity. Unless Your Account has been suspended by Us, You will have credit available up to Your Maximum Credit Limit. Your first advance must be in an amount equal to at least the Minimum Initial

Advance and all subsequent advances must be at least equal to the Minimum Other Advance amount as shown above. All advances must be made prior to the Final Date to Request Advance, also shown above. We may refuse to honor any non-conforming advance request and We may return unpaid any such advance check to the payee. If You request an advance by telephone, We will either make a deposit to Your regular share account, Your share draft account or mail You a check, whichever You specify. In any event, such advances will appear on a subsequent statement which will be conclusive evidence of the request and Your obligation to repay it, unless You establish a billing error pursuant to the Fair Credit Billing Act.

☐ **5. PAYMENTS.** Your scheduled payment will be due monthly beginning _____. You can obtain credit advances for 120 months (the "Draw Period"). During the Draw Period, Your Minimum Periodic Payment will be established and fixed: (a) at the time of each advance that is at least equal to $500.00; or (b) each time You make a payment that results in a reduction of at least $500.00 in the principal balance of Your loan. Your new Minimum Periodic Payment (including new payment amounts triggered by a principal reduction of at least $500.00) will be an amount sufficient to amortize Your then outstanding balance over the following 180 months at the then-current interest rate, subject to the lesser of $100.00 or Your Account balance.

You acknowledge that You have received and read a completed copy of this Agreement (including the information on pages 2 and 3) and You agree to its terms.

_____          5/24/13          _____          _____
Borrower                              Date          Borrower                              Date

_____          5/24/23          _____          _____
Witness                              Date          Witness                              Date

**ACKNOWLEDGMENT BY NON-BORROWER WHO WILL EXECUTE A MORTGAGE/DEED OF TRUST.**
The undersigned will be executing a Mortgage/Deed of Trust on the Security Property shown above in favor of SIGNATURE FEDERAL CREDIT UNION, but will have no personal liability under the above Agreement. The undersigned acknowledges receipt of a completed copy of this Agreement.

_____                                              _____
Date                                                      Date

## Additional Provisions

After the Draw Period ends, You will no longer be able to obtain credit advances and You must repay Your outstanding Account balance (the "Repayment Period"). The length of the Repayment Period will depend on the date and the amount of Your last advance but in no event will exceed 180 months. During the Repayment Period, Your Minimum Periodic Payment will be calculated in the same manner as the Draw Period.

Payments will be applied first to any Late Charge owing, then to Finance Charges due, then to the outstanding principal balance. Any unpaid Finance Charges will be paid by subsequent payments and will not be added to the principal. You may make more frequent payments which will reduce Your Finance Charges. You may also repay or prepay all or any portion of the amounts You owe at any time without penalty. Any partial payment or prepayment of Your Account will not delay Your next scheduled payment. Paying only the Minimum Periodic Payment may not be sufficient to fully amortize Your unpaid Account balance by the end of the Repayment Period in which case, you will be required to pay Your entire remaining balance in a single balloon payment on the Agreement Maturity Date. All payments to Us must be in lawful money of the United States.

☒ **6. PAYMENTS.** Your scheduled payment will be due monthly beginning ___7/25/2023___. You can obtain credit advances for 84 months (the "Draw Period"). During the Draw Period, Your Minimum Periodic Payment will be established and fixed at the time of each advance at an amount equal to 1.40% of Your then outstanding Account balance, subject to the lesser of $100.00 or Your Account balance.

After the Draw Period ends, You will no longer be able to obtain credit advances and You must repay Your outstanding Account balance (the "Repayment Period"). The length of the Repayment Period will depend on the date and the amount of Your last advance but in no event will exceed 96 months. During the Repayment Period, Your Minimum Periodic Payment will be established and fixed on the first day of the Repayment Period at an amount equal to 1.80% of Your then outstanding Account balance, subject to the lesser of $100.00 or Your Account balance.

Payments will be applied first to any Late Charge owing, then to Finance Charges due, then to the outstanding principal balance. Any unpaid Finance Charges will be paid by subsequent payments and will not be added to the principal. You may make more frequent payments which will reduce Your Finance Charges. You may also repay or prepay all or any portion of the amounts You owe at any time without penalty. Any partial payment or prepayment of Your Account will not delay Your next scheduled payment. Paying only the Minimum Periodic Payment may not be sufficient to fully amortize Your unpaid Account balance by the end of the Repayment Period in which case, You will be required to pay Your entire remaining balance in a single balloon payment on the Agreement Maturity Date. All payments to Us must be in lawful money of the United States.

**7. FINANCE CHARGES.** Except for during any Introductory Rate Period, You will be charged a Finance Charge at a Variable Periodic Rate on Your Account for the period such balance is outstanding. Balance(s) change each time advances are made, payments are made or credits given. The Finance Charge begins to accrue on the date of each advance and there is no grace period. The Finance Charge is determined by multiplying the unpaid balance of Your Account at the close of each day in the billing cycle being accounted for by the Daily Periodic Rate. The balance used to compute the Finance Charge is the unpaid balance each day after payments, credits and unpaid Finance or Late Charges have been subtracted and any new advances, insurance premiums and or other charges have been added. The sum of these charges is the Finance Charge You owe.

☐ On the date Your Account is established, FINANCE CHARGES will be computed using a Daily Periodic Rate of _____%, corresponding to an **ANNUAL PERCENTAGE RATE** of _____%.

☒ On the date Your Account is established, Your Account will be subject to a discounted Introductory Rate, FINANCE CHARGES will be computed using a Daily Periodic Rate of ___.007946___%, corresponding to an **ANNUAL PERCENTAGE RATE** of ___2.90___%. This Introductory Rate will be in effect until ___5/24/2033___. If Your Account was not subject to this discounted Introductory Rate, Your Account would have been subject to a Daily Periodic Rate of ___.024658___% corresponding to an **ANNUAL PERCENTAGE RATE** of ___9.00___%.

**8. VARIABLE RATE.** Your Account is subject to a Variable Rate which is based on the Prime Rate as published in the Money Rates Section of The Wall Street Journal in effect on the day that any Introductory Rate period expires, and subsequently, on the last business day of March, June, September and December of each year ("Index") plus ___1.00___ percentage points ( ___1.000___ %) ("Margin"). If more than one Interest Rate is shown, We will use the higher Interest Rate. The Index plus the Margin equals the Interest Rate. Changes in the Index will cause changes in the Interest Rate on the day that any Introductory Rate period expires, and subsequently, on the first day of each calendar quarter of each year. Increases or decreases in the Interest Rate will result in like increases or decreases in the Finance Charge and may affect the number of Your regularly scheduled payments. The Annual Percentage Rate does not include costs other than interest. Your Interest Rate will never be less than 4.00% nor more than 18.00% and will apply to the remaining principal balance. Under some circumstances, Your payment will not cover the Finance Charges that accrue and Negative Amortization will occur. Negative Amortization will increase the amount that You owe Us and reduce Your equity in Your home. If the Index becomes unavailable, We may select another Index and Margin which would result in a substantially similar Interest Rate.

**9. SECURITY.** Your Account is secured by a Mortgage/Deed of Trust You have given Us on the Security Property described above as well as the proceeds of the sale of such Security Property. Except as stated herein, Your Account is not secured by any other collateral, real or personal, tangible or intangible.

**10. OTHER CHARGES.** In addition to the Finance Charges, Your Account is subject to certain other charges which You agree to pay either separately or as a result of advances made to Your Account ("e" means estimate):

| | |
|---|---|
| Appraisal Fee | $ |
| Recording Fees | $ |
| Title Policy Fees | $ |
| Other | |
| Proc & Inv prop orig fee | $ 250.00 + 1,541.88 |
| Total of Charges | $ 1,791.88 |

**11. COLLECTION COSTS.** To the extent permitted by law, You agree to pay all costs of collection, including attorneys' fees whether or not suit is filed, and other costs, including court costs.

**12. PROPERTY INSURANCE.** You agree to insure the Security Property against fire and other hazards, in the amount and for the period required by Us, with Us named as Mortgagee for Our protection. You may purchase the insurance from any insurer You want, but We have the right not to accept the insurer for reasonable cause. If You do not get or keep such insurance, We may (but are under no obligation to do so) obtain it and add the costs to the principal balance of Your Account and You agree to pay for it.

**13. TERMINATION.** If You fail to meet the terms of repayment, or if You act or fail to act in a way that adversely affects Our security interest or other rights in the Security Property, or if You have committed fraud or made a material misrepresentation in connection with the Account, We may terminate this Agreement and require You to pay Us the outstanding balance in one payment, or subject to the Governing Law, cause the Security Property to be sold and the proceeds of sale to be applied to Your obligation to Us. To the extent permitted by law, You agree to pay any reasonable costs of protecting, retaking, repairing or selling the Security Property.

**14. SUSPENSION.** Your right to request additional advances may be suspended, or Your Maximum Credit Limit reduced, at Our option, in the following instances: (1) You fail to make the scheduled payments due to Us; (2) You fail to make timely payments to the holders of Mortgages/Deeds of Trust senior to Ours; (3) You fail to pay real property taxes prior to delinquency; (4) You fail to maintain the required property insurance; (5) the value of the Security Property declines significantly below the appraised value upon which We relied in approving Your application; (6) We reasonably believe that Your ability to meet Your payment obligations is impaired because of a material change in Your financial circumstances; (7) Governmental action precludes Our imposing the Interest Rate provided herein or adversely affects the priority of Our Security Interest such that the value of Our interest is less than 120% of Your Maximum Credit Limit; (8) the maximum Interest Rate under this plan is reached; or (9) Government regulatory authorities find that further advances under this plan constitute an unsafe and unsound practice. When the condition which caused the suspension of advances or reduction of Your Maximum Credit Limit no longer exists, the original terms of this Agreement

Borrower's Initials _____

## Additional Provisions (continued)

will be reinstated. You understand that if Your right to request additional advances is suspended or Your Maximum Credit Limit is reduced, You still owe Us whatever sums You have already borrowed, all other charges under this Agreement and applicable Finance Charges.

**15. CHANGE IN TERMS.** We may change the terms of this Agreement upon proper notice to You in the following situations: (1) as provided in this Agreement; (2) to adopt a new Index if the current Index becomes unavailable; (3) by written agreement with You; (4) if the change benefits You; or (5) the change is insignificant.

**16. ADDITIONAL INFORMATION.** You agree that You will promptly tell Us in writing if You move, change Your name or change Your employment. You will also provide Us updated financial information upon Our request.

**17. DELAY IN ENFORCEMENT.** We can delay enforcing any of Our rights under this Agreement without losing them. We can accept late payments, partial payments, or any other payments even if they are marked "paid in full," without losing any of Our rights under this Agreement.

**18. SEVERABILITY.** If any provision of this Agreement is held to be unenforceable, such determination shall not affect the validity of the remaining provisions of this Agreement.

**19. LIABILITY OF PARTIES.** Each Borrower will be responsible, jointly and severally, for the repayment of amounts owed.

**20. TAX DEDUCTIBILITY.** You should consult a tax advisor regarding the deductibility of interest and charges under Your Account.

**21. GOVERNING LAW.** This Agreement is controlled and governed by the laws of the State of Virginia except to the extent that the laws of the state where the Security Property is located governs property rights related to the Security Property and except to the extent that such laws are inconsistent with controlling federal law.

**22. EFFECT OF SURVIVAL EVENTS.** If the Security Property that secures Your Account is located in the Commonwealth of Pennsylvania, then for the purposes of this Agreement, "Survival Event" is defined as follows: (a) any default described in the Termination provision of this Agreement; (b) any instance giving rise to Our ability to require You to immediately pay the full amount of principal which has not been paid, and all the interest that You owe on that amount as described in this Agreement; (c) any instance giving rise to Our ability to require immediate payment in full of all sums secured by the Deed of Trust/Mortgage; (d) the Agreement Maturity Date as defined in this Agreement; (e) the entry of any judgment against You under this Agreement; and (f) the entry of any judgment under the Deed of Trust/Mortgage.

**YOUR BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE.**

This notice contains important information about Your rights and Our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR STATEMENT.**

If You think Your statement is wrong, or if You need more information about a transaction on Your statement, write Us on a separate sheet, at Our address shown in this Agreement. Write to Us as soon as possible. We must hear from You no later than 60 days after We send You the first statement on which the error or problem appeared. You can telephone Us, but doing so will not preserve Your rights.

In Your letter, give Us the following information:
- Your Name and Account Number.
- Dollar amount of the suspected error.
- Describe the error and explain, if You can, why You believe there is an error. If You need more information, describe the item You are not sure about.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.**

We must acknowledge Your letter within 30 days, unless We have corrected the error by then. Within 90 days, We must either correct the error or explain why We believe the statement was correct.

After We receive Your letter, We cannot try to collect any amount You question, or report You as delinquent. We can continue to bill You for the amount You question, including Finance Charges, and We can apply any unpaid amount against Your Credit Limit. You do not have to pay any questioned amount while We are investigating, but You are still obligated to pay the parts of Your statement that are not in question.

If We find that We made a mistake on Your statement, You will not have to pay any Finance Charges related to any questioned amount. If We didn't make a mistake, You may have to pay Finance Charges, and You will have to make up any missed payments on the questioned amount. In either case, We will send You a statement of the amount You owe and the date that it is due.

If You fail to pay the amount that We think You owe, We may report You as delinquent. However, if Our explanation does not satisfy You and You write to Us within 10 days telling Us that You still refuse to pay, We must tell anyone We reported You to that You have a question about Your statement and We must tell You the name of anyone We reported You to. We must tell anyone We reported You to that the matter has been settled between Us when it finally is.

If We don't follow these rules, We can't collect the first $50.00 of the questioned amount, even if Your statement was correct.

Borrower's Initials

# EXHIBIT 2



P.O. Box 148
Alexandria, Virginia 22313-0148
FEDERAL CREDIT UNION    1-800-336-0284

## CREDIT LINE ACCOUNT VARIABLE INTEREST RATE HOME EQUITY SECURED OPEN-END CREDIT AGREEMENT AND TRUTH-IN-LENDING DISCLOSURE

Name  ANTHONY ZEOLI
(Borrower)                                                                                          (Borrower)

Address of Security Property  205 SOUTH WHITTAKER ST            NEW BUFFALO        MI          49117
                    (Street)                                              (City)            (State)         (Zip)

Legal Description of Security Property  PLEASE SEE EXHIBIT A FOR LEGAL DESCRIPTION

Date of Agreement  5/24/2023            Loan Number  02              Account Number  587038

Maximum Credit Limit $ 154,188.00      Minimum Initial Advance 500.00        Minimum Other Advance  NA

Final Date to Request Advance  5/24/2030            Agreement Maturity Date  6/25/2038

In this Agreement, the use of the words "Credit Union," "We," "Us" and "Our" mean SIGNATURE FEDERAL CREDIT UNION. Any person who signs this Agreement as Borrower, individually and collectively, is sometimes referred to as "You" or "Your." "Account" means the line of credit available to You under the terms of this Agreement. Numbers, phrases or words preceded by a ☐ are applicable only if the ☐ is marked, e.g. ☒.

**1. PROMISE TO PAY.** You promise to pay Us all amounts You borrow from Us under this Agreement, together with Finance Charges, Late Charges, Collection Costs or other charges described herein.

**2. USE OF YOUR ACCOUNT.** To the extent permitted by law and in this Agreement, You may use Your Account for any purpose.

**3. CREDIT LIMIT.** We have granted You a Maximum Credit Limit which is shown above and You agree not to exceed this Maximum Credit Limit. If You do, You will be in default under this Agreement and, in addition to any other rights We may have, We may require You to repay such excess sums immediately. Any amount of credit extended that exceeds the Maximum Credit Limit stated above is not secured by the interest in the Security Property. In the event that Your Maximum Credit Limit is increased, this Agreement will continue in effect subject to the new Maximum Credit Limit.

**4. ADVANCES.** You may request an advance by telephone, in person, by letter or by using any other means We have provided to access Your Account. When You request an advance, We may require You to prove Your identity. Unless Your Account has been suspended by Us, You will have credit available up to Your Maximum Credit Limit. Your first advance must be in an amount equal to at least the Minimum Initial

Advance and all subsequent advances must be at least equal to the Minimum Other Advance amount as shown above. All advances must be made prior to the Final Date to Request Advance, also shown above. We may refuse to honor any non-conforming advance request and We may return unpaid any such advance check to the payee. If You request an advance by telephone, We will either make a deposit to Your regular share account, Your share draft account or mail You a check, whichever You specify. In any event, such advances will appear on a subsequent statement which will be conclusive evidence of the request and Your obligation to repay it, unless You establish a billing error pursuant to the Fair Credit Billing Act.

☐ **5. PAYMENTS.** Your scheduled payment will be due monthly beginning _____. You can obtain credit advances for 120 months (the "Draw Period"). During the Draw Period, Your Minimum Periodic Payment will be established and fixed: (a) at the time of each advance that is at least equal to $500.00; or (b) each time You make a payment that results in a reduction of at least $500.00 in the principal balance of Your loan. Your new Minimum Periodic Payment (including new payment amounts triggered by a principal reduction of at least $500.00) will be an amount sufficient to amortize Your then outstanding balance over the following 180 months at the then-current interest rate, subject to the lesser of $100.00 or Your Account balance.

You acknowledge that You have received and read a completed copy of this Agreement (including the information on pages 2 and 3) and You agree to its terms.

Borrower                          Date  5/24/23            Borrower                          Date

Witness                           Date  5/24/23            Witness                           Date

**ACKNOWLEDGMENT BY NON-BORROWER WHO WILL EXECUTE A MORTGAGE/DEED OF TRUST.**
The undersigned will be executing a Mortgage/Deed of Trust on the Security Property shown above in favor of SIGNATURE FEDERAL CREDIT UNION, but will have no personal liability under the above Agreement. The undersigned acknowledges receipt of a completed copy of this Agreement.

_____                        _____
Date                                          Date

Copyright Oak Tree Business Systems, Inc. 1997-2023. All Rights Reserved.        Page 1 of 3                        OTBS 020 NAPLI (3/23)

## Additional Provisions

After the Draw Period ends, You will no longer be able to obtain credit advances and You must repay Your outstanding Account balance (the "Repayment Period"). The length of the Repayment Period will depend on the date and the amount of Your last advance but in no event will exceed 180 months. During the Repayment Period, Your Minimum Periodic Payment will be calculated in the same manner as the Draw Period.

Payments will be applied first to any Late Charge owing, then to Finance Charges due, then to the outstanding principal balance. Any unpaid Finance Charges will be paid by subsequent payments and will not be added to the principal. You may make more frequent payments which will reduce Your Finance Charges. You may also repay or prepay all or any portion of the amounts You owe at any time without penalty. Any partial payment or prepayment of Your Account will not delay Your next scheduled payment. Paying only the Minimum Periodic Payment may not be sufficient to fully amortize Your unpaid Account balance by the end of the Repayment Period in which case, you will be required to pay Your entire remaining balance in a single balloon payment on the Agreement Maturity Date. All payments to Us must be in lawful money of the United States.

☒ **6. PAYMENTS.** Your scheduled payment will be due monthly beginning 7/25/2023. You can obtain credit advances for 84 months (the "Draw Period"). During the Draw Period, Your Minimum Periodic Payment will be established and fixed at the time of each advance at an amount equal to 1.40% of Your then outstanding Account balance, subject to the lesser of $100.00 or Your Account balance.

After the Draw Period ends, You will no longer be able to obtain credit advances and You must repay Your outstanding Account balance (the "Repayment Period"). The length of the Repayment Period will depend on the date and the amount of Your last advance but in no event will exceed 96 months. During the Repayment Period, Your Minimum Periodic Payment will be established and fixed on the first day of the Repayment Period at an amount equal to 1.80% of Your then outstanding Account balance, subject to the lesser of $100.00 or Your Account balance.

Payments will be applied first to any Late Charge owing, then to Finance Charges due, then to the outstanding principal balance. Any unpaid Finance Charges will be paid by subsequent payments and will not be added to the principal. You may make more frequent payments which will reduce Your Finance Charges. You may also repay or prepay all or any portion of the amounts You owe at any time without penalty. Any partial payment or prepayment of Your Account will not delay Your next scheduled payment. Paying only the Minimum Periodic Payment may not be sufficient to fully amortize Your unpaid Account balance by the end of the Repayment Period in which case, You will be required to pay Your entire remaining balance in a single balloon payment on the Agreement Maturity Date. All payments to Us must be in lawful money of the United States.

**7. FINANCE CHARGES.** Except for during any Introductory Rate Period, You will be charged a Finance Charge at a Variable Periodic Rate on Your Account for the period such balance is outstanding. Balance(s) change each time advances are made, payments are made or credits given. The Finance Charge begins to accrue on the date of each advance and there is no grace period. The Finance Charge is determined by multiplying the unpaid balance of Your Account at the close of each day in the billing cycle being accounted for by the Daily Periodic Rate. The balance used to compute the Finance Charge is the unpaid balance each day after payments, credits and unpaid Finance or Late Charges have been subtracted and any new advances, insurance premiums and or other charges have been added. The sum of these charges is the Finance Charge You owe.

☐ On the date Your Account is established, FINANCE CHARGES will be computed using a Daily Periodic Rate of _____%, corresponding to an ANNUAL PERCENTAGE RATE of _____%.

☒ On the date Your Account is established, Your Account will be subject to a discounted Introductory Rate. FINANCE CHARGES will be computed using a Daily Periodic Rate of .007946 %, corresponding to an ANNUAL PERCENTAGE RATE of 2.90 %. This Introductory Rate will be in effect until 8/24/2023. If Your Account was not subject to this discounted Introductory Rate, Your Account would have been subject to a Daily Periodic Rate of .024658 % corresponding to an ANNUAL PERCENTAGE RATE of 9.00 %.

**8. VARIABLE RATE.** Your Account is subject to a Variable Rate which is based on the Prime Rate as published in the Money Rates Section of The Wall Street Journal in effect on the day that any Introductory Rate period expires, and subsequently, on the last business day of March, June, September and December of each year ("Index") plus _____ 1.00 percentage points ( 1.000 %) ("Margin"). If more than one Interest Rate is shown, We will use the higher Interest Rate. The Index plus the Margin equals the Interest Rate. Changes in the Index will cause changes in the Interest Rate on the day that any Introductory Rate period expires, and subsequently, on the first day of each calendar quarter of each year. Increases or decreases in the Interest Rate will result in like increases or decreases in the Finance Charge and may affect the number of Your regularly scheduled payments. The Annual Percentage Rate does not include costs other than interest. Your Interest Rate will never be less than 4.00% nor more than 18.00% and will apply to the remaining principal balance. Under some circumstances, Your payment will not cover the Finance Charges that accrue and Negative Amortization will occur. Negative Amortization will increase the amount that You owe Us and reduce Your equity in Your home. If the Index becomes unavailable, We may select another Index and Margin which would result in a substantially similar Interest Rate.

**9. SECURITY.** Your Account is secured by a Mortgage/Deed of Trust You have given Us on the Security Property described above as well as the proceeds of the sale of such Security Property. Except as stated herein, Your Account is not secured by any other collateral, real or personal, tangible or intangible.

**10. OTHER CHARGES.** In addition to the Finance Charges, Your Account is subject to certain other charges which You agree to pay either separately or as a result of advances made to Your Account ("e" means estimate):

| | |
|---|---|
| Appraisal Fee | $ |
| Recording Fees | $ |
| Title Policy Fees | $ |
| Other | |
| Proc & Inv prep orig fee | $ 250.00 + 1,541.88 |
| Total of Charges | $ 1,791.88 |

**11. COLLECTION COSTS.** To the extent permitted by law, You agree to pay all costs of collection, including attorneys' fees whether or not suit is filed, and other costs, including court costs.

**12. PROPERTY INSURANCE.** You agree to insure the Security Property against fire and other hazards, in the amount and for the period required by Us, with Us named as Mortgagee for Our protection. You may purchase the insurance from any insurer You want, but We have the right not to accept the insurer for reasonable cause. If You do not get or keep such insurance, We may (but are under no obligation to do so) obtain it and add the costs to the principal balance of Your Account and You agree to pay for it.

**13. TERMINATION.** If You fail to meet the terms of repayment, or if You act or fail to act in a way that adversely affects Our security interest or other rights in the Security Property, or if You have committed fraud or made a material misrepresentation in connection with the Account, We may terminate this Agreement and require You to pay Us the outstanding balance in one payment, or subject to the Governing Law, cause the Security Property to be sold and the proceeds of sale to be applied to Your obligation to Us. To the extent permitted by law, You agree to pay any reasonable costs of protecting, retaking, repairing or selling the Security Property.

**14. SUSPENSION.** Your right to request additional advances may be suspended, or Your Maximum Credit Limit reduced, at Our option, in the following instances: (1) You fail to make the scheduled payments due to Us; (2) You fail to make timely payments to the holders of Mortgages/Deeds of Trust senior to Ours; (3) You fail to pay real property taxes prior to delinquency; (4) You fail to maintain the required property insurance; (5) the value of the Security Property declines significantly below the appraised value upon which We relied in approving Your application; (6) We reasonably believe that Your ability to meet Your payment obligations is impaired because of a material change in Your financial circumstances; (7) Governmental action precludes Our imposing the Interest Rate provided herein or adversely affects the priority of Our Security Interest such that the value of Our Interest is less than 120% of Your Maximum Credit Limit; (8) the maximum Interest Rate under this plan is reached; or (9) Government regulatory authorities find that further advances under this plan constitute an unsafe and unsound practice. When the condition which caused the suspension of advances or reduction of Your Maximum Credit Limit no longer exists, the original terms of this Agreement

Borrower's Initials _____

## Additional Provisions (continued)

will be reinstated. You understand that if Your right to request additional advances is suspended or Your Maximum Credit Limit is reduced, You still owe Us whatever sums You have already borrowed, all other charges under this Agreement and applicable Finance Charges.

**15. CHANGE IN TERMS.** We may change the terms of this Agreement upon proper notice to You in the following situations: (1) as provided in this Agreement; (2) to adopt a new Index if the current Index becomes unavailable; (3) by written agreement with You; (4) if the change benefits You; or (5) the change is insignificant.

**16. ADDITIONAL INFORMATION.** You agree that You will promptly tell Us in writing if You move, change Your name or change Your employment. You will also provide Us updated financial information upon Our request.

**17. DELAY IN ENFORCEMENT.** We can delay enforcing any of Our rights under this Agreement without losing them. We can accept late payments, partial payments, or any other payments even if they are marked "paid in full," without losing any of Our rights under this Agreement.

**18. SEVERABILITY.** If any provision of this Agreement is held to be unenforceable, such determination shall not affect the validity of the remaining provisions of this Agreement.

**19. LIABILITY OF PARTIES.** Each Borrower will be responsible, jointly and severally, for the repayment of amounts owed.

**20. TAX DEDUCTIBILITY.** You should consult a tax advisor regarding the deductibility of interest and charges under Your Account.

**21. GOVERNING LAW.** This Agreement is controlled and governed by the laws of the State of Virginia except to the extent that the laws of the state where the Security Property is located governs property rights related to the Security Property and except to the extent that such laws are inconsistent with controlling federal law.

**22. EFFECT OF SURVIVAL EVENTS.** If the Security Property that secures Your Account is located in the Commonwealth of Pennsylvania, then for the purposes of this Agreement, "Survival Event" is defined as follows: (a) any default described in the Termination provision of this Agreement; (b) any instance giving rise to Our ability to require You to immediately pay the full amount of principal which has not been paid, and all the interest that You owe on that amount as described in this Agreement; (c) any instance giving rise to Our ability to require immediate payment in full of all sums secured by the Deed of Trust/Mortgage; (d) the Agreement Maturity Date as defined in this Agreement; (e) the entry of any judgment against You under this Agreement; and (f) the entry of any judgment under the Deed of Trust/Mortgage.

**YOUR BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE.**

This notice contains important information about Your rights and Our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR STATEMENT.**

If You think Your statement is wrong, or if You need more information about a transaction on Your statement, write Us on a separate sheet, at Our address shown in this Agreement. Write to Us as soon as possible. We must hear from You no later than 60 days after We send You the first statement on which the error or problem appeared. You can telephone Us, but doing so will not preserve Your rights.

In Your letter, give Us the following information:
- Your Name and Account Number.
- Dollar amount of the suspected error.
- Describe the error and explain, if You can, why You believe there is an error. If You need more information, describe the item You are not sure about.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.**

We must acknowledge Your letter within 30 days, unless We have corrected the error by then. Within 90 days, We must either correct the error or explain why We believe the statement was correct.

After We receive Your letter, We cannot try to collect any amount You question, or report You as delinquent. We can continue to bill You for the amount You question, including Finance Charges, and We can apply any unpaid amount against Your Credit Limit. You do not have to pay any questioned amount while We are investigating, but You are still obligated to pay the parts of Your statement that are not in question.

If We find that We made a mistake on Your statement, You will not have to pay any Finance Charges related to any questioned amount. If We didn't make a mistake, You may have to pay Finance Charges, and You will have to make up any missed payments on the questioned amount. In either case, We will send You a statement of the amount You owe and the date that it is due.

If You fail to pay the amount that We think You owe, We may report You as delinquent. However, if Our explanation does not satisfy You and You write to Us within 10 days telling Us that You still refuse to pay, We must tell anyone We reported You to that You have a question about Your statement and We must tell You the name of anyone We reported You to. We must tell anyone We reported You to that the matter has been settled between Us when it finally is.

If We don't follow these rules, We can't collect the first $50.00 of the questioned amount, even if Your statement was correct.

Borrower's Initials _____

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
WILL COUNTY, ILLINOIS**

ANTHONY ZEOLI,

**Plaintiff /Petitioner**

**vs**

SIGNATURE FEDERAL CREDIT UNION,

**Defendant/Respondent**

**CASE NO:** _____

## APPEARANCE BY ATTORNEY

I, David B. Levin _____, an attorney, enter my appearance in this case on behalf of:

First          Middle          Last

Anthony Zeoli

Name

☑ Plaintiff/Petitioner

☐ Defendant/Respondent

☐ Other _____

as:

☐ Additional Counsel                    ☑ Regular Counsel

☐ Court Appointed Counsel           ☐ Substitute Counsel

☐ Guardian Ad Litem                    ☐ _____

By using this form, I agree to receive court documents at this email address.

dlevin@toddflaw.com

| | |
|---|---|
| Attorney Signature | 707 Skokie Blvd., Suite 600 |
| David B. Levin | Street Address |
| Attorney Name | Northbrook, IL 60062 |
| Law Offices of Todd M. Friedman, P.C. | City, State, Zip |
| Law Firm | (224) 218-0882 |
| 6212141 | Telephone # |
| ARDC # | (866) 633-0228 |
| | Fax # |

**ANDREA LYNN CHASTEEN, CLERK OF THE CIRCUIT COURT OF WILL COUNTY**

| Original– Court | Copy – Plaintiff | Copy – Defendant | **17 B** Revised (04/18) |